Bombs, not bombs, against the city for a lot of them. Just a minute. Please support. My name is Kirsten Anderson, and I, along with my colleagues, Andrea Costello and Jodi Siegel represent the plaintiffs appellants in this case, Fort Lauderdale Food, Not Bombs, and individual volunteer members with that group. In this case against the city of Fort Lauderdale for violations of their First and Fourteenth Amendment rights. Plaintiffs request that this court find that the district court erred when it failed to recognize that plaintiffs are engaged in constitutionally protected First Amendment activity. When they hold political demonstrations in Stranahan Park, which is a traditional public forum in the city of Fort Lauderdale, and they share food to symbolically communicate the message that's communicated by the group's very name, Food, Not Bombs. The city has utilized a zoning ordinance and a park rule to prohibit this activity completely in public space as it relates to the plaintiffs as part of their political protests in the city. The zoning ordinance and the park rule don't prohibit food sharing generally, they only that is if it's to meet a person's physical needs. The city... Can I ask you a broad overall question as you dive into your argument? Do you contend that the First Amendment issues need to go to a jury because there are disputes of fact about, for example, the way that the client distributes the food and what sort of context it does that in? Or do you think that on the record that the district court had before it, you're entitled to judgment as a matter of law on whether or not the food sharing is part of the overall conduct is protected under the First Amendment, both the speech and association theories? We contend that there are no material facts in dispute, that the facts in the record that were in front of the district court are sufficient to show what the factual context was of the client's speech as an example that you raised and that this court can issue a judgment as a matter of law. But you're contending that the district court should not have granted separate judgment? That's correct. Well, there are two reasons for the argument. One is that the court misapplied the law. The other is there are factual issues that are unresolved or should be resolved by a law applied. Are you conceding that there's not one factual issue involved in this case? Certainly there are issues. That's a huge concession if you want to make it. Certainly our position is that the judge misapplied the law to the facts in dispute. You're not answering my question. What did I ask? You asked if I'm conceding whether or not there are material facts in dispute and the answer is no, I'm not conceding that. You're not conceding that? Are you contending that there are no material facts in issue? That's correct. So one side wins or loses on summary judgment? That's correct, Judge. I believe that the . . . Part of your brief, and that's the reason I asked you the question, part of your brief says that the district court failed to take into account a certain number of facts or at least facts viewed in the light most favorable to you in the record, failed to draw inferences in your favor. That starts to sound like the district court was resolving factual issues and that wasn't its role at summary judgment. You should send it back and there has to be at least some fact finding by a jury. For example, the question of whether or not, based on your expert's declaration, whether or not food sharing is expressive in the general sense, not whether it's entitled to First Amendment protection. That's a legal question for the court. But there may need to be some subsidiary factual findings on those basic issues. That's what I want to find out from you and I think, Judge Chouflat, too, whether you think that there are some things that need to be resolved and that's why summary judgment was inappropriate or whether you think either you win across the board or the city wins across the board on the record. Let me add a footnote to what my colleague just said. I tried to throw you a softball, it wasn't a hardball. In my judgment, what an observer, a reasonable observer watching what's going on in the park would conclude is a fact question. You did not, for example, allege a religion clause argument, allegation, like you did in Orlando. Well, one perception when you're feeding the poor is that there's charity going on out there and people are doing something for the poor that the government is not appropriately doing. But besides that, we have an obligation to look after the poor. Now, that's a message that somebody watching the poor being fed might perceive reasonably. That's a fact issue, whether or not whatever is going on out there yields that inference. And there are other inferences as well. But you want to give all those away, that's fine. In your brief and in your moving papers, on the one hand, you say this is not any charitable work. But on the other hand, you talk about feeding the poor, going all the way back to biblical days. So I don't know where you are. Well, Your Honor, just to circle back to the original question related to facts in dispute, the declaration that was submitted by our expert was... Forget the expert. I'm talking about, do you still say there are no factual disputes? If that's the case, then as a matter of law, what should an observer conclude from watching poor people being fed in a public place? First of all, the observer would not conclude that a charitable act was going on as a matter of law. There were not being there, so they were being fed not out of a responsibility to look after the poor, of citizens, but they were just being fed and it doesn't make any difference. There's no constitutional implication. That's your argument. Well, I think... So I don't know what's left of your argument, because feeding the poor is not part of it. I suppose parading around with a sign, once in a while there is a sign. So the observer, as a matter of law, would disregard feeding the poor and look at the sign. Is that your argument? That you disregard the sign? Is that your argument, what I just said? Feeding the poor is irrelevant. As a matter of law, the observer would not consider that this was being done out of no bliss oblige, that people have a responsibility, historically, to look after the poor. That's not a message at all, as a matter of law. The only message that's left is what? Well, I think in our case, certainly you do consider the factual circumstances. We are, but we just eliminated one of them, a major one in my view. So what is left is what I'm trying to say. I'm not sure I understand the question, but I'm going to try to answer it. It's not a question, it's a statement. You have conceded that feeding the poor is irrelevant, as a matter of law. I don't believe that I have. I think that what our clients are doing is they're feeding poor and hungry people as a symbolic expression of their message that society needs to change so that we're taking care of the back of humanity. Well, I mean, that's obviously when you feed the poor, you're sending a message to other people in society that they'll be doing the same thing. That's part of charity. But as I understand your argument, this is not charity. This is a matter of law. Therefore, feeding the poor for charitable purposes is irrelevant. It doesn't have any constitutional significance, even though an observer might observe that. No, Your Honor, that's not our argument. What we're saying is that our clients are not a charity in the sense that they're not a traditional soup kitchen. I didn't say that you were a charity. We're talking about what an observer thinks when people are being fed in the park, poor people. Right, absolutely. And I think that in terms of what the reasonable observer, we're looking at the Holloman test, which is whether a reasonable person would infer some sort of message. For purposes of that part of the test, it doesn't matter if our clients might have additional nuances to their message in addition to charity, which might be the message that's inferred by a reasonable observer. As long as somebody is inferring that they're actually communicating a message, that's enough to satisfy that prong of the test. Let me tell you why I think we may be having a little bit of trouble getting our hands around exactly what you're trying to argue on appeal. Assume this different scenario, that members of Food Not Bombs go out into, let's say, Stranahan Park. They're all dressed in very different ways. They have nothing that identifies them as members of this organization or that portrays any sort of message through a printed t-shirt or a placard or a sign or anything else. And then each of them has a boxed lunch, and they spread out and farm out through the park. And each of them tries to find a person in need and gives them the boxed lunch. Is there expressive conduct protected by the First Amendment in that case? It would depend on whether there was an intent to convey a particular message. That's part of the test, right? So let's assume that, yes, they all had the intent to convey the same message that Food Not Bombs has. How about the second part of the test, what a reasonable observer would believe was expressive, what they would perceive? It would... You can't tell, right? It would be... Yeah. Well, and that's not our situation here. I know. I know it's not. Right. I'm trying to circle back to it. To the factual... The fact that the facts are what are at issue here. I'm asking, not telling you. I don't know. Well, that was the question. As it relates to our client's activity... So in other words, you may not be able to divorce. You may not be able to divorce as the district court seemed to do, and I don't know whether that was right or wrong. That's one of the things we've got to figure out. The context in which the food sharing and giving was taking place, right? But if that's the case, then going back to our earlier questions, you may be back to factual issues because unless you're going to have a single district judge on the record you have or the hypothetical I gave you determined as a matter of law what a reasonable observer would or would not perceive, then you've got some issues. I think that... If you think about all that while you listen to the other argument, I think you maybe need some time to ponder the questioning from the bench. Okay. Thank you, Judge. Okay. I think so. Mr. Broido, let me tell you right off what concerns me. Good morning. In my view, forget what they're arguing. I'm just going at the facts. In my view, feeding the poor in a public place sends a message to somebody observing, regardless of the intent of whoever is doing the feeding. It sends a message and the message is protected by the First Amendment. What my problem with the legislation is this, I understand that other people, churches or other people can have picnics or feed people in the park and that's all right. What you can't do is feed the poor. So that to me is content driven. Your Honor, there's... How do you reconcile the Rotary Club having a picnic out there and a church having a picnic and maybe the atheists have a picnic and somebody else has a picnic out there and they're all sitting there eating in the park, but here comes somebody with some food and they're feeding the poor and that's not permitted. It's permitted. No, because it's a social service and that's not permitted as I understand it. It is permitted because there's two regulatory schemes. One deals with the social service aspect, which is under the city's ULDRs. The other feedings, the churches, the picnics, things of that sort, corporate events are done under a separate series of laws in the ordinances. There are different requirements there. They have to provide insurance. They have to pay for city services, police, things of that sort, the type of requirements that wouldn't be appropriate for a social service. We do not ban social services. They are not... No, you ban feeding the poor. Because you... Well, I misread a lot of things then. Because what they rely upon in that argument is... I'm not talking about what they're relying on. I'm looking at the facts of the case and the legislation. They may have conceded their whole case. That's their problem. But they are appealing a summary judgment. When you appeal a summary judgment, there are two arguments. One is the court misapplied the law or the court found facts that... This court found facts that feeding the poor is not protected. That's not what the court found. It's a one-line sentence that it's not protected. It's not protected because of the inherent or lack of inherent conduct at issue. This court... No, no, no. He made a flat statement that feeding the poor, as I read his opinion in one sentence at the conclusion, is not protected. It's not feeding the poor. It's feeding, to begin with, the same thing that this court did seven years ago in the first issuance of the first vagabond case. It's too ambiguous and too common an act to convey a message. And Judge Jordan touched upon it. When you look at the photographs, actually, that they've appended at 40-31 and look at the videos, what do you see? Take away the signs. Don't look at the signs or anything else. You see folks sitting, gathered, eating, something we do three times a day. The objection... So you're trying to take away the context, and that's what the district court did, too. But if you had... Think of a parade. If you have 10,000 people walking down the streets of Atlanta down Peachtree on a given day, right, and you take away from a photograph or a video messages on their shirts, banners, placards, flags, or whatever, how do you have any idea whether or not they're trying to convey a message or not, or just wanted to go out for a friendly walk? And Hurley touched upon that very issue. And in Hurley, prior to making the determination and going to any sort of conduct, a parade, the point they made is the only point in a parade is to make a point. It's inherently expressive. You're not in a parade just to go from point A to point B. So in that, there's a recognition, same as in Holloman, where the raise of the fist, there's that finding of some inherent expression at the time that's communicative. Are you contending that feeding the poor in a park, people who are not poor feeding poor people in the park are not sending a message? None of it is sending a message. It's too... Of any kind. Of any kind. Any message. Any message. Are they sending a message? If that... Well, let me put it this way.  That's what you're saying. No First Amendment message. It's too ambiguous a message. Would you agree that one message is that the poor need to be fed and the government isn't doing it, so citizens are doing it? Possibly, or it could just be because they want to help them out, or they could be there that day... Well, helping them out, it's charitable and it's a citizen's responsibility. Isn't that the message? If that's the case, Your Honor, then any conduct, and the court in Clark and in other cases have cautioned that if that's the case... You keep citing cases. I'm looking at the facts. You've got poor people being fed in the park. Then any conduct... You say that's no message. There is no message. It's too ambiguous a message. There's otherwise, if that were true, without any explicit receipt, because fair... You say it's too ambiguous as a matter of law. Yes, because it's an objective standard. So it doesn't matter how many are there, or what the soup kitchen or whatever it is looks  It's too ambiguous. Even if you look at the context as suggested by Judge Jordan... No, I'm looking at the facts. At the facts. The pictures. But under fair, we can't look at the explanatory language. We're looking strictly at the conduct. And if we're looking at the conduct, and we're looking at the context, where the park is, who they're feeding, strictly that alone, you're still in the same place. Okay. So if you have somebody feeding with a t-shirt that says, you know, we are doing this because we should spend our money on the poor and not the military. So what you do is, when you take a look at the snapshot of that person doing that food sharing, you blot out, you edit out the t-shirt and what the t-shirt says. No, but that's explanatory language. But you're blotting it out. So you're saying you blot it out. If you're going to look strictly at the conduct, because that's all we're dealing with here is the conduct. Let's assume there's nothing on a t-shirt. They're simply feeding the poor. There's some people out there, well-dressed, let's say, with a little soup kitchen, and they're feeding poor people at noon o'clock on a workday or a weekend, whatever it is. Your argument is, as a matter of law, there is no protected speech. Correct. Okay. Is that what they were doing, feeding poor people? I know we've said that repeatedly. Yes. But if I walked up, could I get food? Their philosophy is that it's not, they don't check to see if they're feeding the poor. There are lots of photographs in the record, and amongst them is basically that. Generally it is, but their philosophy is that anyone who comes up with a t-shirt. Forget the philosophy. Okay. They're feeding the poor. Yes. Correct. But vehemently denied that they're doing it for charity. She says that it's irrelevant. We're out here talking about bombs. We're just kind of using the poor as a prop. But that isn't what I say. That's not what the observer would say. Well, it's an objective standard. Going back to the question with summary judgment. It's an objective standard, not subjective. So even if you have, we've conceded all along that we have no disputes of fact. So you agree that food sharing is expressive? No. Then you've got an issue because you've got a declaration. Not expressive as a matter of law. It can be expressive under certain circumstances. Okay. All right. But you just said that we're trying to hold her to her concessions. I want to try to hold you to the same standard. You said that there are no disputes of fact, right? Correct. That means you accept all the facts in the record in the light most favorable to them, correct? You have an expert affidavit, not struck, right? Correct. District court denied your motion to strike, rejecting your argument that it was full of legal conclusions. And part of that expert affidavit says that food sharing, it doesn't resolve the ultimate question of whether it's protected by the First Amendment, and it doesn't state an opinion on whether or not the ordinances are faulty. All it says is that from time in memoriam, food sharing and giving has an expressive content. And what is a district court supposed to do with that if you think that there are no disputes of fact? Same thing the first vagabond decision did seven years ago to say that we're not here to say that it can never be communicative. But in this case, under these facts, it is not. Well, under what ... Just take a hypothetical case of some citizens in a park with some food, and there are poor people lined up, they're in rags, and they're being fed. That's that case. Your argument is there is no First Amendment speech there. There's no message. There may be a message, but it's not protected. But it's what? It's not protected. It's too ambiguous. I understand. Therefore, it's not speech. Correct. Because then any conduct ... It's not speech. I have your case. It's not speech. Correct. You say that ... But the district court's ruling was not tied to a very specific determination of what happened here. The sentence that Judge Chauflin alluded to earlier is this. This court finds that outdoor food sharing, no qualifications, does not convey plaintiff's alleged particularized message unless it is combined with other speech, such as that involved in plaintiff's demonstrations. Correct. That's a pretty broad statement. It is, and it's consistent with the fair opinion. Don't our cases say that it has to just convey some message and not necessarily viewed as a particular message to get protection? Holloman and Hurley do. Right. But in the context of, again, in Hurley, having made the determination, and it's interesting in that opinion, before they make that declaration, they give the examples of inherent communicative conduct, the armband, the flag burning, things of that sort. In the context of the parade, again, it's inherently, there's only one point to a parade to make a point. The court was correct in saying that, look, you don't need to know every single person's specific intent as long as the messages are coming across. But the court had already recognized that a parade in and of itself was expressive. Same in Holloman, when Judge Joe Flatt wrote that, you know, raising the arm in the context of, in response to the Pledge of Allegiance, that at least some of the students may have known, probably knew what he was doing, but again, people don't go around all day going like this. This conveys a message. Oh, it was obvious, counsel. Excuse me? In Holloman, it was obvious. Right. Let's get back to this. You say, feeding the poor, people in the park feeding poor people, the hypothetical case, there's no message. Not in this case. No, I'm going to the hypothetical question. Feeding the poor in the park, there's no speech that's protected. There can be. If somebody says, makes a speech, here's why we're feeding the poor. Arguably, if. No, no. Is that needed in addition to the message that just the feeding conveys? Yes, because when you hand somebody. I'll tell you what, most charities that feed the poor in a public place don't start preaching to everybody who sees them. Do you know why we're feeding the poor? We're feeding the poor because there's a moral obligation to feed the poor. This obligation. They don't say that. In the city. No, that's hubris. They don't say a word. They just let the people watch them feed the poor. But you say that's not protected. I will concede, though, that the obvious message in handing somebody a plate of food in the context that we're looking at, at the park, the poor, they're feeding, can convey a message. That's correct. In handing the plate of food. You're saying on the facts in this case, it doesn't. Correct. Because they're completely denouncing. As a matter of law, there are no fact issues on the point. Correct. Because it's an objective standard and they've completely denounced. They've locked themselves in to one message and one message only. When you hand somebody a plate of food, the first thing that comes to mind is, let's divert funds from the military. I take it one last argument you would make. Let's suppose that we read the ordinance and all the legislation that applies to prohibit the serving of food to the poor in a public park, let's assume that. But somebody else could go out there and have a picnic. Your argument would be that prohibiting the feeding of the poor would not be content neutral. That's your argument. Well, it's content neutral. Yes, but it's not being prohibited. It's being regulated. Both are regulated. Whether it's for social services or whether it's not for social services, they're both being regulated. They're allowed to do it. They just have to go through the permitting process that's been set forth, which they haven't done and they haven't attempted to do. Let me ask you this question. Let's go to the issue of vagueness for a second. How many people do you have to feed to come within the ordinance and the regulation? It's a land-based ULDR, so there's no number of persons. So what triggers the ordinance's requirements? If it's defined as a social service. Which is content-based. Not necessarily. Of course it is. If you are regulating, and I'm assuming that we've gotten past the First Amendment point, so you have to accept that even though I know you disagree vehemently with it. If you are regulating expressive conduct only because it conveys a certain message or falls into a certain category of speech, that is content-based regulation, is it not? If we look at the... In other words... Not necessarily because the legislative act here doesn't target the expression, it targets the secondary effects. Same thing that happened... What's the difference in secondary effect between a church having a picnic on a park and feeding the same number of people? The loitering, the secondary effects that we've listed in our papers, the loitering and lingering in the parks prior and before, the garbage, the defecation, urination, the increase in pain handling, the deleterious effect on the actual damage to the park, things of that sort. Again, with the other types of feedings, they go through a separate agreement with the city through the city's event ordinance where they have to pay for city services to take care of all that. They have to provide insurance. They have to hold a city... They have to have a hold harmless agreement with the city. So those folks just don't go out there and do it. They have to have an event agreement that has all those things in place. So if you take two box lunches and you're doing it as a social service to feed the poor, but all you can afford that day is to buy two lunches at McDonald's and hand them out to the poor, you're covered? Because here... Yes or no? No. If it's two... The scenario again is two people and you're doing it as a social service, presuming it fits the definition of social service, yes. Oh, I'm asking you. Those are the facts. Yes. It would because, again, it's a land-based use where... One. I buy one McDonald's Happy Meal. Am I covered? No. And I say I've got an extra $5 today, I'm going to go buy a Happy Meal and I'm going to go give it to the first poor person I see in the park. Am I covered? Under the definition, I don't believe that would fall as a social service. Why does two cover it and one not? Because of the intent behind the definition of social service. The intent? How's a person on the street supposed to know the intent of the statute and decide what's protected and what's not protected, what's covered, what's not covered? They know what they're doing and the purpose for what they're doing it for. But you just told me that two gets covered and one does not. Well, no. Not necessarily one, two. You have to look at... No. Those are my facts. You told me that two was covered. It's a service. Both of them are services. I'm doing the exact same thing except in the second hypothetical, I don't have enough money to feed two people. I can only feed one. Right. You told me two is covered, one is not covered and I want to know how the reasonable person on the street is able to gather that distinction in terms of figuring out what's covered and what's not covered by the ordinance. The number is not covered by the ordinance and therefore... So one is covered? Theoretically? Not theoretically. Actually? Actually. One is covered? Actually, one person... I don't know that that would be a service under the definition, no. What service? What does service mean? Service is defined as, and we're obviously stuck with what is defined in the ordinance. Any service provided to the public to address public welfare and health such as, but not limited to, the provision of food, hygiene care, group rehabilitative or recovery assistance... Okay. So I provided food and I've done it for a social reason, for social welfare. I'm covered. That's a reasonable argument. So if it falls under that... You and I have been having this debate and we're not sure what's covered and what's not covered. Doesn't that cause you any vagueness concerns? I think that we know what's covered. It's just... Who knows? Because you just know it's like obscenity, you just know it when you see it? No, but it's like the, again, citing again the case law, when we're dealing with the case law, we do not put every hypothetical into an ordinance. It's an unartful way of perhaps stating it, but there's no way that we can comprehensively cover every single scenario within the ordinance. We classify it as a social service based on the secondary effects, not on the message, but on the secondary effects. You don't have those secondary effects with one or two people that are possibly just handing a sandwich. The problem and the reason that it went to a land-based use type of ordinance or type of law is because in this case, it's a repetitive every week commandeering of a park. You're using that land for your purposes at least once a week and taking it. So the land-based aspect of it versus the outdoor event, which is dealing with the other ones, they have different requirements, but because they have different secondary effects. And I see that I'm out of time. No. Thank you very much for answering the question. In this case, it's our position that the undisputed facts in the record, if the appropriate legal test is applied to them, that it shows that our clients were engaged in protected First Amendment activity. Alternatively, we asked in our initial brief that if this court finds that there are disputed issues of material fact, that this court reverse the summary judgment and remand for a trial on liability in this case. And I just have a couple of points to respond to Mr. Boileau's argument. The first is that the factual context is relevant. You don't just ignore the fact that this is taking place within the context of a protest and the U.S. Supreme Court decisions and this court's decisions really emphasize that point. In some of the flag-burning cases, for example, there's a recognition that they're taking place in the middle of a political protest to protest a particular thing. For example, U.S. involvement in Iran in Monroe versus Fulton County or the flag-burning taking place at a political protest in connection with the Republican National Convention. This court doesn't have to just pretend like that context doesn't exist in the context of deciding this case. The other point is that if, as Mr. Boileau concedes, it can be that feeding the poor is inherently expressive, then what we do look at is our client's intent to convey their particularized message and then whether a reasonable person would infer some sort of message. Now, what the court erred in doing is that it found that the food sharing doesn't convey plaintiff's alleged particularized message unless it's combined with other speech. But Hurley is instructive on this point where the court said that the fact that there are multifarious voices or that a plaintiff hasn't edited down its precise message to one specific theme doesn't mean that it's any less worthy of First Amendment protection. The fact that they are communicating a message that society should divert funds from the military to people in need can be communicated in various other ways during the protest. But the sharing of food is really the core expression to people in need to communicate that food is a human right and that society should address those needs. The other point about the interests that Mr. Boileau mentioned, those interests are not implicated by small groups, for example. And a big point is that other individuals who are sharing food for other purposes can get permits. Our clients cannot. It is banned in every public forum in the city because the city is deemed— Well, you say you can't get them, but you haven't tried to get them, right? It's a prohibited use in all city parks and in all city sidewalks. Have you tried to get any permits for any of your activities? No, because the city had not set up a permit scheme at the time that it started arresting people. And then when it suspended enforcement of the ordinance, it still has not. And that's in the record as well. And I see I'm out of time. You're out of time, but we have your case. We'll move to the next case. Gutierrez v. Wells Fargo.